IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: MARGARET ADELINE VELTRE, | ) | |
| | ) | |
| Debtor, | ) | Civil Action No. 17-239 |
| | ) | |
| Margaret Adeline Veltre, | ) | |
| by her attorney in fact DINA MILLER | ) | |
| | ) | *Appeal from:* |
| Appellant | ) | |
| v. | ) | Bankruptcy Case No. 16-23699-CMB |
| | ) | Adversary Proceeding No. 16-2213 CMB |
| FIFTH THIRD BANK, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

## **OPINION**

CONTI, Chief District Judge.

### I. Introduction

The matter pending before this court is an appeal from the January 27, 2017, Order issued by the United States Bankruptcy Court for the Western District of Pennsylvania and entered in Adversary Proceeding No. 16-2213. (ECF No. 1-3.) The bankruptcy court dismissed, with prejudice, the November 17, 2016, complaint filed by appellant-debtor Margaret Adeline Veltre by her attorney in fact Dina Miller ("debtor") against appellee Fifth Third Bank ("Fifth Third" or "appellee"), which sought to avoid the sheriff's sale of her house as a preference under 11 U.S.C. § 547. (Id.; ECF No. 6 at 1.) The bankruptcy court explained its reasons for dismissing debtor's complaint in a Memorandum Opinion dated January 27, 2017. (ECF No. 1-1.) This court has jurisdiction over the present appeal in accordance with 28 U.S.C. § 158(a). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

1

On February 6, 2017, debtor filed an appeal in this court. (ECF No. 6.) On June 9, 2017, Fifth Third filed a brief in opposition. (ECF No. 9.) Debtor seeks review of the bankruptcy court's order granting Fifth Third's motion to dismiss debtor's complaint and upholding the sheriff's sale of debtor's property.

For the reasons set forth below, the court concludes that, as a matter of law, a sheriff's sale conducted in Pennsylvania cannot be an avoidable preference under 11 U.S.C. § 547, because the price attained at a validly conducted sheriff's sale is as much as or more than the value that would be assigned to the property in a hypothetical Chapter 7 liquidation, and, therefore, a creditor cannot receive more through a sheriff's sale than it would receive under a hypothetical Chapter 7 liquidation.

## II. Factual and Procedural Background

The facts underlying this appeal are undisputed. (ECF No. 6 at 1.) Debtor owned residential property located at 2317 Haymaker Road, Monroeville, PA 15416 (the "property"), which she used as her home.[1] (Id.) Debtor had two mortgages on the property: the first granted in favor of Capital One Bank ("Capital One") and the second granted in favor of appellee, Fifth Third. (Id.)

After debtor failed to make the required mortgage payments to Capital One for approximately eighteen months, Capital One initiated foreclosure proceedings by filing a Complaint for Mortgage Foreclosure in the Allegheny County Court of Common Pleas in December 2014. (ECF No. 9 at 6.) In May 2015, the Allegheny County Court of Common Pleas entered a default judgment, and on June 10, 2015, Capital One obtained a writ of execution for

---

[1] Debtor is now deceased and survived by her daughter, who currently resides at the property with her family. (ECF No. 9 at 7.)

2

the property. (Id.) On July 5, 2016, the Allegheny County Sheriff sold the property at a regularly conducted sheriff's sale. (Id.) The property was sold to Fifth Third for $90,000, which was sufficient to pay the debt due Capital One. (ECF No. 1-1, 2.) On August 15, 2016, the Sheriff's Office of Allegheny County issued a sheriff's deed to Fifth Third in compliance with the Allegheny County Recorder of Deeds' and applicable sheriff's sale procedures. (ECF No. 9 at 6.) On October 2, 2016, the 90th day after the sale, debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. (ECF No. 6 at 2.) Debtor did not challenge the foreclosure proceedings prior to initiating bankruptcy proceedings and agrees with Fifth Third that the sheriff's sale complied with applicable state law. (ECF No. 9 at 6.)

On November 17, 2016, debtor commenced an adversary proceeding against Fifth Third alleging Fifth Third's purchase of the property was an avoidable preference under 11 U.S.C. § 547. Debtor maintains that Fifth Third received a preference of approximately $80,000.[2] (ECF No. 6 at 2; ECF No. 1-1 at 3.) On December 16, 2016, Fifth Third filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 1-1 at 2.) After a hearing on Fifth Third's motion on January 19, 2016, the United States Bankruptcy Court for the Western District of Pennsylvania dismissed the adversary complaint. (Id. at 5.) The bankruptcy court determined that, as a matter of law, the execution of a properly conducted non-collusive sheriff's sale is not a preferential transfer under 11 U.S.C. § 547(b). The court came to this conclusion based in large part on BFP v. Resolution Trust Corporation, 511 U.S. 531 (1994). In BFP, a debtor challenged a sheriff's sale under the fraudulent transfer provisions of the Bankruptcy

---

[2] The bankruptcy court aptly noted that "[p]ursuant to the Debtor's pleadings, the $80,000.00 claim is derived from the difference of the sale price of the Property paid by Fifth Third in the amount of $90,000.00 with the property's alleged market value in the amount of $200,000.00 less the debt owed to Fifth Third in the amount of $25,000.00. The Court recognizes the Debtor's math is not exact and that the Debtor's asserted value of the Property varies among the pleadings, but is accurate to the extent the numbers reflect that Fifth Third arguably obtained a substantial equity cushion in the Property." (ECF No. 1-1 at 3.)

Code, 11 U.S.C. § 548. Section 548 provides that a trustee may avoid a transfer if, among other things, the transferor did not receive a reasonably equivalent value for the property; in other words, it would be a constructively fraudulent transfer.11 U.S.C. § 548. The Supreme Court held that a sheriff's sale of property cannot be a fraudulent transfer because the price obtained at a foreclosure sale constitutes a reasonably equivalent value as a matter of law under 11 U.S.C. § 548. (ECF 1-1.) In this case, the bankruptcy court applied the Supreme Court's reasoning as it related to § 548, and held that "property sold at a properly conducted and otherwise non-collusive foreclosure sale may not serve as the basis of a preference action under 11 U.S.C. § 547." (Id. at 2.)

On February 2, 2017, debtor filed a notice of appeal. (Id.) Debtor argues that the bankruptcy court's application of BFP was incorrect, and that in accordance with the plain language and legislative history of § 547, this court should find that the sheriff's sale of debtor's property met the requirements for a preferential transfer under § 547. Debtor argues the sheriff's sale was a transfer that permitted Fifth Third to receive a greater amount than it would have received under a hypothetical Chapter 7 liquidation, and, thus, is an avoidable preference under § 547(b)(5). (ECF No. 6 at 2.) Fifth Third filed a response on February 19, 2015. (ECF No. 9 at 1.) Fifth Third argues that the bankruptcy court correctly applied the Supreme Court's reasoning in BFP, and that in accordance with this precedent the transfer of property pursuant to a non-collusive sheriff's sale cannot be avoided as a preference under § 547. (Id. at 7.) Having been fully briefed, the matter is ripe for disposition.

### III. Standard of Review

Federal district courts have appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. 158(a)(1). "Upon appeal of a ruling from bankruptcy

4

court, this Court reviews the Bankruptcy Court's legal conclusions *de novo,* its factual findings for clear error, and its exercise of discretion for abuse thereof." In re Gisondi, Civ. Action No. 13-6147, 2014 WL 683755, at *2 (E.D. Pa. Feb. 21, 2014) (citing In re Goody's Family Clothing, Inc., 610 F. 3d 812, 816 (3d Cir. 2010)); *see* Friedman's Liquidating Tr. v. Roth Staffing Cos. LP. (In re Friedman's Inc.), 738 F.3d 547, 551–52 (3d Cir. 2013); Baroda Hill Invest., Ltd v. Telegroup, Inc. (In re Telegroup, Inc.), 281 F.3d 133, 136 (3d Cir. 2002). When a case involves mixed questions of law and fact, the court "must differentiate between those two categories and 'apply the appropriate standard to each component.' " Montgomery Ward & Co., Inc. v. Meridian Leasing Corp. (In re Montgomery Ward Holding Corp.), 326 F.3d 383 (3d Cir. 2003) (quoting United States of America v. Fegeley (In re Fegeley), 118 F.3d 979, 982 (3d Cir. 1997)).

## IV. Discussion

Debtor seeks to avoid the transfer of her property to Fifth Third as a preferential transfer, in accordance with 11 U.S.C § 547. Under § 547, in order to maintain an action to avoid a preferential transfer, a plaintiff must establish that the transfer of an interest of the debtor in property was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>  (A) on or within 90 days before the date of the filing of the petition; or
>  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>  (A) the case were a case under chapter 7 of this title;
>  (B) the transfer had not been made; and

5

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The final element of § 547(b) "constitutes the so-called 'greater amount test,' which 'requires the court to construct a hypothetical chapter 7 case and determine what the creditor would have received if the case had proceeded under chapter 7' without the alleged preferential transfer." <u>Tenderloin Health Inc. v. Back of the West (In re Tenderloin Health)</u>, 849 F.3d 1231, 1235 (9th Cir. 2017) (quoting <u>Alvarado v. Walsh (In re LCO Enters.)</u>, 12 F.3d 938, 941 (9th Cir. 1993)); *see* <u>Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.)</u>, 811 F.3d 786, 792 (5th Cir. 2016) ("To determine whether a trustee has established this requirement . . . . the court (1) constructs a hypothetical Chapter 7 liquidation in which the creditor retains the disputed transfers, *viz.,* the transfers-*retained* hypothetical, and (2) constructs another in which the creditor returns those transfers, *viz.,* the transfers-*returned* hypothetical. To establish the requirement of § 547(b)(5) under this analysis, the sum of (1) the disputed transfers and (2) the creditor's distribution in the transfers-retained hypothetical must be "more" than the creditor's distribution in the transfers-returned hypothetical.") (emphasis original); <u>Rambo v. Chase Manhattan Mortgage Corp. (In re Rambo)</u>, 297 B.R. 418 (Bankr. E.D. Pa. 2003) ("The § 547 analysis . . . . requires a comparison of what the creditor would receive in a liquidation under Chapter 7, a hypothetical inquiry, with what the creditor actually received."); *see also* S. REP. No. 95-989, at 87 (1978), *reprinted in* U.S.C.C.A.N. 5787, at 5873 (1978) ("[T]he creditor must receive more than he would if the case were a liquidation case, if the transfer had not been made, and if the creditor received payment of the debt to the extent provided by the provisions of the code.") "This process can often be complex, as it requires the valuation of contingent interests, causes of action, disputed claims, and other assets of the

debtors that may not be subject to an easy calculation of worth." Taunton v. Reding (In re Taunton), 306 B.R. 1, 4 (M.D. Ala. 2004).

The central thrust of debtor's argument is that the sheriff's sale of her property conducted on July 5, 2016, meets the requirements outlined in § 547(b) and should, therefore, be avoided as a preferential transfer. Debtor argues that the bankruptcy court erred in determining that a duly conducted sheriff's sale can *never* be a preferential transfer under § 547, because § 547(b)(5) requires only that a creditor receive more through the transfer than it would under a hypothetical Chapter 7 liquidation and here the sheriff's sale met this requirement.

In its memorandum opinion, the bankruptcy court relied heavily on the Supreme Court's holding in BFP, to support the conclusion that property sold at "a properly conducted and otherwise non-collusive sheriff's sale may not be avoided as a preference action under 11 U.S.C. § 547." (ECF No. 1-1 at 6.) In BFP, the Supreme Court had to determine whether a property sold through a valid foreclosure sale could be considered a fraudulent transfer under 11 U.S.C. § 548. While the sale in BFP complied with state law, the property was sold for significantly less than fair market value. Under § 548(a)(1), a transfer can be avoided if there is "constructive fraud," which occurs when a debtor receives "less than a reasonably equivalent value" in exchange for the transfer. 11 U.S.C. § 548. The Court had to determine whether a validly conducted foreclosure sale could constitute constructive fraud if the property sold for less than fair market value. In other words, for purposes of § 548, does the fair market value control what can be considered reasonably equivalent value?

The Court conclusively decided that reasonably equivalent value does not equal fair market value. The Court reasoned that fair market value "is a well-established concept," and that Congress acted intentionally when it included the term "reasonably equivalent value," rather than

"fair market value" in § 548. BFP, 511 U.S. at 537. The Court also held that "[m]arket value cannot be the criterion of equivalence in the foreclosure-sale context" because fair market value presumes market conditions that are not in existence in the context of a forced sale. Id. at 538–39 ("property that *must* be sold within those strictures [of a forced sale] is simply *worth less*) (emphasis original). Based on these determinations, the Court held that fair market value has no bearing in the context of a forced sale.

Instead, the Court looked at the effect permitting validly conducted foreclosure sales to be considered fraudulent transfers under § 548 would have on state interests. The Court reasoned that while Congress has the power to disrupt state law pursuant to its grant of authority over bankruptcy, U.S. Const., Art. I, § 8, cl. 4, in instances where exercising this authority would have a profound effect on "an essential state interest," and would "displace traditional state regulation . . . the federal statutory purpose must be 'clear and manifest.' " Id. at 544 (quoting English v General Elec. Co., 496 U.S. 72, 79 (1990)). With respect to the term "reasonably equivalent value," the Court held that there was not sufficiently clear textual guidance in § 548 to find that Congress intended to impinge on the important interest states have in ensuring the security of titles to real estate. Id. at 544–45. The Court, therefore, held that "a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at [a validly conducted] foreclosure sale," and that mere inadequacy of the foreclosure sale price could not be considered a basis for setting the sale aside under § 548. Id. at 542–43, 545. Here, the bankruptcy court determined that the Supreme Court's reasoning in BFP was equally applicable to claims brought under § 547, and that consequently "Fifth Third could not and did not 'receive more' for purposes of § 547(b)(5) because it purchased the Property at a regularly conducted, non-collusive sheriff's sale." (ECF No. 1-1 at 6.)

8

In addition to applying the rationale set forth in BFP, the bankruptcy court looked to a series of opinions decided within the Western District of Pennsylvania, each of which addressed the exact issue whether a sheriff's sale could be avoided as a preference under § 547.[3] The Bankruptcy Court for the Western District of Pennsylvania first confronted this question in The Chase Manhattan Bank v. Pulcini (In re Pulcini), 261 B.R. 836, 844 (Bankr. W.D. Pa. 2001). In Pulcini, the bankruptcy court relied on BFP to conclude that a validly conducted, non-collusive sheriff's sale cannot be avoided as a preferential transfer under § 547. Id. The court held:

> Although BFP dealt with § 548(a), not § 547(b), we believe that the rationale of BFP applies to the present matter with equal force. It compels the conclusion that a pre-petition transfer of a debtor's interest in real property to a lien creditor who purchases the property at a regularly-conducted, non-collusive sheriff's sale and who then sells the property to a third party for an amount greater than the amount of its lien is not avoidable in accordance with § 547(b) as a preference. In particular, the lien creditor does *not* "receive more" for purposes of § 547(b)(5) than it would receive in a chapter 7 liquidation.

Id. In support of this conclusion, the bankruptcy court cited many of the policy concerns discussed in BFP.

> What is at stake is the essential sovereign interest in the security and stability of title to land. . . . The intent of Congress to displace traditional state regulation . . . must be "clear and manifest". Otherwise, the Bankruptcy Code must be construed to adopt rather than displace preexisting state law. Applying these precepts to the present matter, we conclude that the chapter 7 trustee's position, if adopted, unquestionably would profoundly affect Pennsylvania's essential interest in making title to real property stable and secure. Title to real property purchased at a foreclosure sale "would be under a federally created cloud". Although the language of § 547(b) would, at first blush, seem to support the chapter 7 trustee's position that the sale of the property to CMB falls within the scope of § 547(b)(5) and is avoidable as a preference, we find no "clear and manifest" indication that when it enacted § 547(b) Congress intended to override the long-standing law of Pennsylvania concerning title to real property.

Id. at 844–45 (quoting BFP, 511 U.S. at 544).

---

[3] Although the bankruptcy court acknowledged that "there is no such thing as 'law of the district,'" and that it was not bound by the decisions of other bankruptcy courts, it ultimately found persuasive the reasoning applied in these other decisions. (ECF No. 1-1 at 5) (citing Threadgill v.Armstrong World Indus., Inc., 928 F. 2d 1366, 1371(3d Cir. 1991)).

9

In subsequent decisions, the Bankruptcy Court for the Western District of Pennsylvania adopted the reasoning applied in Pulcini and held that, as a matter of law, a validly conducted sheriff's sale cannot be avoided as a preference under § 547. *See* Electra Lighting & Elec. Co. v. S & T Bank (In re Free), 449 B.R. 461, 465 (Bankr. W.D. Pa. 2011) (citing Pulcini to support the conclusion that a sheriff's sale cannot be avoided as a preference under § 547 because such a sale does not "enable the [creditor] to receive more on its pre-petition claim against the Debtor than it would have had such sheriff's sales not been conducted and the [creditor] instead had received payment by way of a hypothetical Chapter 7 liquidation"); JP Morgan Chase Bank v. Rocco (In re Rocco), 319 B.R. 411, 418 (Bankr. W.D. Pa. 2005), *subsequently aff'd sub nom*. Rocco v. J.P. Morgan Chase Bank, 255 F. App'x 638 (3d Cir. 2007) ("The concerns expressed and addressed by Pulcini are valid, well reasoned and persuasive. In light of the foregoing and consistent with the Pulcini analysis as applied to the facts of this case, 11 U.S.C. § 547 is not available to the Debtors.").

Fifth Third argues that this court should adopt the reasoning of Pulcini and find that because this case involved a validly conducted sheriff's sale that complied with Pennsylvania law, the price garnered at this sale was a "fair and proper price," and, therefore, the creditor could not have "received more" through the sheriff's sale than it would have received under a Chapter 7 liquidation. *See* BFP, 511 U.S. at 543. Fifth Third asserts that permitting the avoidance of a valid sheriff's sale would have a significant negative impact on state property law – a consequence the Court purposely sought to avoid in BFP – because such a decision would undermine the foreclosure and sheriff's sale processes, as well as the stability of titles issued pursuant to Pennsylvania law.

Debtor argues that the Supreme Court's decision in BFP is inapplicable to § 547, because the term "reasonably equivalent value" is not included in § 547. Unlike under § 548(a)(1), where a transfer can be avoided when a debtor receives "less than a reasonably equivalent value" in exchange for a transfer, under § 547(b)(5) a transfer can be avoided when a creditor receives more than it would under a hypothetical Chapter 7 liquidation. 11 U.S.C. §§ 547, 548. Debtor claims that based on the plain language of § 547, sheriff's sales are subject to avoidances as preferences as long as the creditor received more through the sheriff's sale than it would have received through a hypothetical Chapter 7 liquidation. *See* Whittle Dev. Inc. v. Branch Banking & Trust Co., (In re Whittle Dev., Inc.), 463 B.R. 796, 802–03 (Bankr. N.D. Tex. 2011) ("[I]f a creditor executes on secured property and obtains the property for what is found to be less than what it would have garnered in a hypothetical liquidation, then the transfer may be avoided under the plain meaning of section 547(b).").

Debtor argues that Pulcini, Free, and Rocco, each of which was decided in this district and each of which determined that a validly conducted sheriff's sale cannot be avoided under § 547, unduly rely on the policy rationales cited by the Supreme Court in BFP. Debtor argues that when a text is unambiguous, policy rationales – such as the federalism concerns cited by the bankruptcy court in Pulcini – cannot supplant the plain language of the text, and that in BFP the Court reached the stated policy concerns only after first finding that the operative language of § 548 was ambiguous. *See* Rambo, 297 B.R. at 427 ("Whether the value determination under a different provision of the Bankruptcy Code should follow the *BFP* value determination requires an analysis first of the statute, not the policies that would support it.").

Debtor asserts that because the plain language of § 547 is not ambiguous, Pulcini and its progeny impermissibly rely on the policy rationales cited in BFP, instead of first interpreting the

11

plain language of § 547. Debtor asks that this court reject the reasoning of these decisions in favor of a plain language interpretation of § 547. *See* Id. at 428 ("While there is no doubt that preserving the integrity of regularly conducted foreclosure sales animated the majority decision [in BFP], its holding is based on its articulated conclusion that the statute was ambiguous in failing to provide a measure of valuation. The policy rationale therefore does not stand alone nor could it as it is not the prerogative of a court to make the law but rather to interpret it.").

Though not specifically cited by debtor, it is worth noting that other courts have found that the policy concerns raised by the Court in BFP, especially the concern about the stability and security of real property, are not as significant in the § 547 context. One of these courts concluded:

> If an otherwise valid foreclosure sale is found to enable a creditor to obtain more than he would in a chapter 7 liquidation, then the additional amount of benefit conferred to the creditor is simply brought back into the estate. The purchaser of the real estate at the foreclosure does not necessarily lose its property unless the purchaser is the creditor himself. This approach furthers the state's interest in maintaining the security of titles without subverting the policy of the Code of maintaining equality among the creditors . . . the risks to third parties who buy the property at the foreclosure are non-existent.

Whittle, 463 B.R. at 801–02.

The court agrees with debtor that it should begin its analysis with the language of the statute. *See* Burns v. Alcala, 420 U.S. 575, 580–81 (1975); Singh v. Attorney Gen. of U.S., 677 F.3d 503, 510 (3d Cir. 2012). As stated earlier, in order to maintain an action to avoid a preferential transfer under § 547, a plaintiff must establish that the transfer "enables such creditor to receive more than such creditor would receive if the case were a case under chapter 7 of this title." 11 U.S.C. § 547. This language clearly differs from the "reasonably equivalent value" language of § 548. The court cannot simply assume that because the value obtained at a sheriff's sale equals "reasonably equivalent value," that the value obtained at a sheriff's sale also equals

what a creditor would receive under Chapter 7 liquidation.[4] The court needs to examine the language utilized in § 547.

Under § 547, a court must construct a hypothetical Chapter 7 liquidation. Rambo, 297 B.R. at 431. By its nature, the accuracy of this *hypothetical* analysis can never be completely certain and presents complicated issues. *See* Tenderloin Health, 849 F.3d at 1237 (quoting In re Affiliated Foods, Inc., 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000) (finding that a hypothetical Chapter 7 liquidation " 'requires an estimation of the value of all of the bankruptcy estate's assets, including such hard to determine values as disputed and contingent claims, the potential disallowance of claims (under § 502(d)), the probability of success and value of causes of action held by the estate, and, in this case, potential preference actions.' "); In re W.R. Grace & Co., 475 B.R. 34, 142 (D. Del. 2012), *aff'd sub nom.* In re WR Grace & Co., 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013), and *aff'd sub nom.* In re WR Grace & Co., 729 F.3d 332 (3d Cir. 2013) (quoting In re Affiliated Foods, Inc., 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000)) ("[T]he valuation of claims in a hypothetical Chapter 7 liquidation is 'not an exact science' because the process entails a considerable degree of speculation."); Candle Company II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.), 383 B.R. 856, 868 (E.D.N.Y. 2008) (quoting ACC Bondholder Groups v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.), 361 B.R. 337, 366-67 (S.D.N.Y.2007))

---

[4] On this matter, the court agrees with the Bankruptcy Court for the Eastern District of Pennsylvania that the majority of decisions that have applied the reasoning of BFP to § 547 have done do so without considering the textual differences between § 547 and § 548, and that the court should not sidestep the text of the statute, even when significant policy concerns are at issue. *See* Rambo, 297 B.R. at 427–28 ("[T]he Supreme Court's recognition of the states' important interest in controlling the laws governing the foreclosure of real property have been imported from the fraudulent conveyance context to preference cases, but without discussion of the statutory predicate, *i.e.,* § 547(b)(5). Whether the value determination under a different provision of the Bankruptcy Code should follow the BFP value determination requires an analysis first of the statute, not the policies that would support it. Because it is axiomatic that a court's duty is to interpret the law not to make it, policy cannot be the basis for construing a statute.").

("[T]he valuation of a hypothetical chapter 7 liquidation is, by nature, inherently speculative and is often replete with assumptions and judgments."). Under these circumstances there is inherent uncertainty and ambiguity in how the court should determine a hypothetical liquidation value.[5]

Under Pennsylvania law, however, "it is presumed that the price received at a duly advertised public sale is the highest and best obtainable." Blue Ball Nat. Bank v. Balmer, 810 A 2.d 164, 167 (Pa. Super. Ct. 2002); see First Fed. Sav. & Loan Ass'n of Lancaster v. Swift, 321 A.2d 895, 896–97 (Pa. 1974); Bank of Am., N.A. v. Estate of Hood, 47 A.3d 1208, 1213 (Pa. Super. Ct. 2012); Hart v. Bulldawg LLC, No. 107 C.D. 2016, 2017 WL 582735, at *3 (Pa. Commw. Ct. Feb. 14, 2017) (citing Blue Ball Nat. Bank, 810 A 2.d at 167). If the value obtained at a sheriff's sale is "the highest and best obtainable," then a trustee would not be able to secure a higher price through a Chapter 7 liquidation, and only if the trustee *were* able to secure a higher price at a liquidation sale could there be a situation where a secured creditor received more through purchasing the property at the sheriff's sale than that same creditor would have received through Chapter 7 liquidation. In other words, because the sheriff's sale price is presumptively the highest price obtainable, a creditor cannot purchase property at a sheriff's sale at an artificially low price, thereby "receiving more" than it would have under the hypothetical liquidation. For the purposes of § 547, then, the price obtained at a non-collusive sheriff's sale conducted in full compliance with Pennsylvania law effectively serves as an upper limit for the hypothetical amount that can be obtained through a Chapter 7 liquidation.[6]

---

[5] Black's Law Dictionary defines "liquidation value" as "[t]he value of a business or of an asset when it is sold in liquidation, as opposed to being sold in the ordinary course of business." Black's Law Dictionary 1785 (10th ed. 2014). This definition does not describe how a hypothetical liquidation value is determined.

[6] While debtor may argue that the value attributed to a piece of property under a hypothetical Chapter 7 liquidation is the property's fair market value and not the amount obtained at a sheriff's sale, fair market value does not pertain to price or purchaser, but to process. Because " 'fair market value' presumes market conditions that, by definition, [do not exist] in the context of a forced sale," it is improper to use

Based upon the long-standing presumption in Pennsylvania that the sheriff's sale price is "the highest and best obtainable," a buyer-creditor cannot receive more by purchasing a piece of property at a sheriff's sale than that same buyer-creditor would have received under a hypothetical Chapter 7 liquidation. Here, the court is not persuaded that an action under § 547 provides a means by which to challenge this presumption.[7] The court can presume that the $90,000 obtained for debtor's property at the sheriff's sale on July 5, 2016, was as much as, if not more than, the price a trustee would have been able to obtain under a Chapter 7 liquidation. Consequently, Fifth Third did not "receive more" through this transfer than it would have received under a hypothetical Chapter 7 liquidation, and debtor cannot maintain an action to avoid a preferential transfer under § 547.

Like in BFP, the court also recognizes that there are serious policy concerns at issue in this case. First and foremost, in light of the policies discussed in BFP, this court agrees with the

---

fair market value as a substitute for Chapter 7 valuation in the context of a forced liquidation. BFP, 511 U.S. at 538. Black's Law Dictionary defines "liquidation price" as "[a] price that is paid for property sold to liquidate a debt · *Liquidation price is usu. below market price*." Black's Law Dictionary (10th ed. 2014) (emphasis added).

[7] Although the Supreme Court in BFP held that the *"*mere inadequacy of [a] foreclosure sale price is no basis for setting [a sheriff's] sale aside" under § 548, it acknowledged that sales "may be set aside (*under state foreclosure law*, rather than fraudulent transfer law) if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" BFP, 511 U.S. at 542 (quoting G. Osborne, G. Nelson, & D. Whitman, Real Estate Finance Law 9, 469, (1979)) (emphasis original). Although there is a presumption under Pennsylvania state law that a sheriff's sale that complies with state procedure is valid, the court recognizes that there are exceptions to this presumption. *See* Blue Ball Nat. Bank, 810 A.2d at 167 (quoting Capozzi v. Antonoplos, 201 A.2d 420, 422 (Pa. 1964)) ("Where a 'gross inadequacy' in the price is established courts have found proper grounds exist to set aside a sheriff's sale."). In order to challenge a sheriff's sale as being so grossly inadequate that it "shocks the conscious" or is indicative of fraud, a trustee may assert this state law claim under § 544 of the Bankruptcy Code. *See* Sikirica v. Wettach (In re Wettach), 811 F.3d 99, 104 (3d Cir. 2016) (quoting 11 U.S.C. § 544(b)(1)) ("The Bankruptcy Code grants the Trustee the power to 'avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law [here, Pennsylvania law] by a creditor holding an unsecured claim.' "); Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003) ("In Chapter 11 cases where no trustee is appointed, § 1107(a) provides that the debtor-in-possession, *i.e.,* the debtor's management, enjoys the powers that would otherwise vest in the bankruptcy trustee."). Debtor, however, did not raise a claim of gross inadequacy under Pennsylvania foreclosure law pursuant to § 544 before the bankruptcy court or on appeal.

bankruptcy court that were federal courts to void state sheriff's sales as preferential transfers under §547, this would disrupt well-settled foreclosure law and act as an encroachment on state property law. Although Congress unquestionably has the power under the bankruptcy clause of the United States Constitution, Art. I, § 8, clause 4, to depart from or to displace state law in the bankruptcy context, the intent of Congress to displace traditional state regulation must be "clear and manifest." BFP, 511 U.S. at 543–45. The court agrees with the line of decisions issued by this district's bankruptcy court, that in enacting § 547 Congress did not present a clear and manifest intent to displace Pennsylvania foreclosure law. Pulcini, 261 B.R. at 844–45 ("We find no 'clear and manifest' indication that . . . congress intended to override" longstanding Pennsylvania property law.); Free, 449 B.R. at 465–66 (As a matter of law, sheriff's sales are unavoidable as preferential transfers under § 547 for precisely the reasoning detailed in *Pulcini)*; Rocco, 319 B.R at 417–18 ("The concerns expressed and addressed by *Pulcini* are valid, well reasoned and persuasive" and, thus, sheriff's sales are not voidable preferences under §547).

The Court in BFP recognized that the security and stability of real estate titles are an "essential" and "important state interest," and that to allow federal courts to set validly conducted sheriff's sales aside would not only interfere with a state's sovereignty to independently legislate and regulate property rights, but would also threaten the stability of validly acquired titles. *See* BFP, 511 U.S. at 542, 544, 565 (quoting American Land Co. v. Zeiss, 219 U.S. 47, 60 (1911)) (The " 'general welfare of society is involved in the security and stability of titles to real estate.' "). Under Pennsylvania law, sheriff's sales are valid at the "fall of the hammer," unless evidence shows fraud or the sale price "shocks the conscience." Pulcini, 261 B.R. at 840; *see* Butler v. Lomas & Nettleton Co., 862 F.2d 1015, 1019 (3d Cir. 1988); Pennsylvania Co. for Insurances on Lives & Granting Annuities, to Use of Jefferson Med. Coll.

of Philadelphia v. Broad St. Hosp., 47 A.2d 281, 283 (Pa. 1946) ("It has been the general understanding in this Commonwealth that the sheriff's sale [is final] when the hammer falls."). The hammer rule is well engrained in Pennsylvania state law and promotes a clear and stable title system. This court agrees that "the principle [of the hammer rule] remains its vitality," and that to allow completed sheriff's sales to be avoided as preferences under § 547 would unduly threaten the security and stability this law provides. Pulcini, 261 B.R. 844–45; see BFP, 511 U.S. at 542; Rocco, 319 B.R. at 417–18.

The court recognizes that the purpose of § 547 is to promote bankruptcy law's central tenet of ensuring equitable distribution of the estate to creditors and to prevent individual creditors from receiving more than their fair share by racing to the courthouse prior to a debtor declaring bankruptcy. *See* H.R.Rep. No. 95–595; 5-547 Collier on Bankruptcy ¶ 547.10 (16th ed. 2017). While debtor argues that sheriff's sales can lead to windfalls for creditors, Pennsylvania courts have found that because the purchaser at a sheriff's sale assumes all the risk, the purchaser should not be denied its reward. Bank of Am., N.A.,47 A.3d at 1213 (enforcing a sheriff's sale, where the property was sold for less than half of its suggested fair market value because the court "declin[ed] to deprive the purchaser of the reward he received for assuming the risk" of bidding at a sheriff's sale); Blue Ball Nat. Bank, 810 A.2d at 168 (finding "that it is the purchaser who takes all of the risk at a sheriff's sale . . . although [a purchaser] may turn a profit from their purchase, their action is not without risk and the price they obtain upon resale does not alone control."). A creditor-purchaser's profit received from the later resale of the foreclosed property does not automatically constitute a windfall or mean the creditor received "more than" a hypothetical Chapter 7 valuation under §547; any profit received from the later sale is received qua purchaser, not qua creditor. *See* Ehring v. Western Community Money Ctr. (In re Ehring),

17

900 F.2d 184, 188–89 (9th Cir. 1990) (finding that the existence of a preference should not turn on the status of the purchaser as creditor—if the creditor as purchaser took advantage of the debtor during the sale process, the transfer should be voided under §548); <u>Newman v. FIBSA Forwarding, Inc. (In re FIBSA Forwarding, Inc.)</u>, 230 B.R. 334, 341 (Bankr. S.D. Tex.) (holding that the profit a creditor purchaser makes from flipping a debtor's home purchased at a sheriff's sale is "not received in [the purchaser's] capacity qua creditor . . . but was received in its capacity qua purchaser").

Thus, the multiple policy interests raised in this case all support the court's conclusion that in Pennsylvania a validly conducted sheriff's sale is not an avoidable preference under § 547.

## V. Conclusion

For the reasons set forth above, the court finds that the bankruptcy court correctly concluded that a valid, non-collusive sheriff's sale of property is not an avoidable preference under 11 U.S.C. §547. Therefore, the bankruptcy court did not err in granting Fifth Third's motion to dismiss.

Debtor's appeal from the bankruptcy court's order will be denied. An appropriate order will follow.

Date: August 14, 2017             /s/ Joy Flowers Conti
                                                            Joy Flowers Conti
                                                            Chief United States District Judge